Matter of Piagentini v New York State Bd. of Parole (2019 NY Slip Op 06229)





Matter of Piagentini v New York State Bd. of Parole


2019 NY Slip Op 06229


Decided on August 22, 2019


Appellate Division, Third Department


Mulvey, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 22, 2019

526594

[*1]In the Matter of DIANE PIAGENTINI, Appellant,
v
NEW YORK STATE BOARD OF PAROLE et al., Respondents.

Calendar Date: May 31, 2019

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Pritzker, JJ.


Worth Longworth & London, LLP, New York City (Mitchell Garber of counsel), for appellant.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for New York State Board of Parole and another, respondents.
Robert J. Boyle, New York City, for Herman Bell, respondent.
Janet E. Sabel, The Legal Aid Society, New York City (Nora Carroll of counsel), for The Legal Aid Society and others, amici curiae.



OPINION AND ORDER
Mulvey, J.
Appeal from a judgment of the Supreme Court (Koweek, J.), entered April 23, 2018 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Board of Parole granting parole to respondent Herman Bell.
After a trial in 1975, respondent Herman Bell [FN1] and two codefendants were each convicted of two counts of murder for the May 1971 deaths of police officers Joseph Piagentini and Waverly Jones. Bell was sentenced to two prison terms of 25 years to life, to run concurrently. Bell had previously been convicted of, and spent time in federal prison for, robbing a bank and, in 2009, pleaded guilty to manslaughter in California for his role in the death of a police officer in August 1971.
Between 2004 and 2016, Bell appeared before respondent Board of Parole (hereinafter the Board) seven times, each appearance resulting in a denial of parole. In anticipation of Bell's eighth appearance before the Board, petitioner, who is Piagentini's widow, submitted a victim [*2]impact statement detailing the emotional impact and posttraumatic stress disorder that she suffers due to Bell's murder of her husband. Following Bell's interview with the Board in 2018, it issued a decision granting him release on parole supervision. After issuing its decision, the Board discovered Bell's sentencing minutes — which had been missing and were not initially considered — and issued an amended decision reflecting that the minutes had been reviewed.
Petitioner sent the Board letters asking it to suspend Bell's release and to conduct a rescission hearing (see 9 NYCRR 8002.5). When the Board did not reply, petitioner commenced this CPLR article 78 proceeding seeking to compel the Board to vacate its release decision and conduct a new hearing. Supreme Court dismissed the petition due to petitioner's lack of standing, but also concluded that, if petitioner had standing, her petition would fail on the merits (60 Misc 3d 713 [Sup Ct, Albany County 2018]). Bell was released on parole supervision in April 2018. Petitioner appeals.[FN2]
The petition's second cause of action [FN3] alleges that the Board failed to "have and consider" petitioner's victim impact statement as required by Executive Law § 259-i. After learning through the Board's answering papers in Supreme Court that the Board had, in fact, reviewed her statement, petitioner has shifted her argument on appeal, now contending that the Board "virtually ignored" and "pay[ed] little or no heed" to her statement. Thus, petitioner is no longer arguing that the Board did not receive — and, therefore, could not have considered — her statement, and is instead arguing that the Board, when rendering its determination, did not accord proper weight to the content of her statement. Essentially, petitioner has abandoned her argument based on a statutory violation — as she must because, as the concurrence notes, the record refutes that argument — and is now focusing on her third cause of action arguing the merits of the Board's decision, asserting that it constituted "irrationality bordering on impropriety" (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000] [internal quotation marks and citation omitted]). Focusing on the second cause of action, the concurrence addresses an argument that petitioner, herself, is no longer relying upon. Similarly, the dissent combines that argument with petitioner's argument on the propriety of the Board's decision, finds standing only for the second cause of action and then addresses the merits of the third cause of action [FN4]. To avoid giving an advisory opinion on an issue not before us, this Court must address the argument that petitioner is actually raising on appeal.
Petitioner primarily argues that the Board's discretionary determination releasing Bell to parole supervision demonstrated "irrationality bordering on impropriety." However, petitioner [*3]lacks standing to make such a challenge. In general, standing is conferred on those who have suffered an injury in fact that is "different in kind and degree from the community generally," and where the interest at stake is within the zone of interest sought to be protected by the statute involved (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987]). Petitioner asserts that she has standing because statutes require that the Board give victims an opportunity to make statements regarding the potential parole release of an inmate (see CPL 440.50), and the Board is required to consider those statements when rendering a parole determination (see Executive Law § 259-i [2] [c] [A] [v]). Although crime victims are granted certain rights in relation to criminal actions and parole proceedings, those rights are limited and do not allow victims to control the criminal process or collateral proceedings.
In a decision addressing the portion of Executive Law § 259-i containing parole revocation procedures, which are not at issue here, the Court of Appeals noted that those procedures "were plainly designed for the protection of the parolees, and are enforceable by them" (Matter of Ayers v Coughlin, 72 NY2d 346, 355 [1988]). The Court concluded that a county sheriff had no standing to challenge the Board's failure to timely schedule a parole hearing, even though sheriffs are directly affected by such untimeliness because they may be forced to house and maintain custody of the parolees in the interim (id. at 354-355). Consistent with that reasoning, the procedures for initially granting parole — at issue here and also located in Executive Law § 259-i — were designed to guide the Board and for the protection of potential parolees and the general public. Standing is not granted to members of the general public, even to raise challenges regarding matters of vital public concern (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769, 774 [1991]). As the inmate/parolee and the Board are the only parties to a parole determination, and the Board cannot challenge its own determination, the inmate/parolee is the only person with standing to challenge the substantive determination regarding parole.
As noted by one court that has previously addressed the issue before us:
"While a relative of a crime victim may be more emotionally affected by the crime than a member of the general public, that increased emotional effect is not sufficient to confer standing. While statutes have been enacted to permit crime victims the right to be heard at certain proceedings (see [CPL] 380.50), their status as crime victims has not been held to confer standing to them at any proceeding. Executive Law § 259[-]i sets forth the procedures to be followed by the [B]oard of [P]arole. Executive Law § 259[-]i (2) (c) (A) provides that when considering whether or not to grant discretionary parole release, the [B]oard must consider 'any statement made to the [B]oard by the crime victim or the crime victim's representative where the crime victim is deceased[.]' The statute does not authorize any further participation in the process by a crime victim or the representative of a victim. It does not serve to confer standing to a victim who desires to challenge the determination. While the [c]ourt does not question whether the families of the victims of crime continue to suffer real emotional effects, there has not been a showing of any legal right that is affected by the determination which they seek to challenge" (Matter of Hancher v Travis, 1 Misc 3d 903[A], 2003 NY Slip Op 51483[U], *3-4 [Sup Ct, Westchester County 2003] [ellipsis omitted]; see Matter of Police Benevolent Assn. of the New York State Troopers Inc. v New York State Bd. of Parole, 2018 NY Slip Op 30687[U], *3 [Sup Ct, Albany County 2018]).
A court in another state provided an in-depth discussion of the analogous question of whether a crime victim — whose procedural rights were honored in a criminal action (i.e., the victim was given notice of the proceedings, was permitted to attend them and allowed to present his or her views to the sentencing judge), but was dissatisfied with the sentencing judge's substantive decision — may independently seek appellate review of the defendant's sentence (Cooper v District Court, 133 P3d 692, 703 [Alaska Ct of Appeals 2006]). That court noted that "American courts are unanimous in answering 'no' to this question" (id.).
"Many states have enacted victims' rights acts, either by constitutional amendment or by legislation or both[,] . . . [b]ut no court has endorsed the position . . . that the enactment of a victims' rights act gives crime victims the right to participate as independent parties to a criminal prosecution or to otherwise challenge the substantive rulings of the trial court" (id. at 705).
"[T]he fact that a person or organization is legally entitled to express their views in court does not necessarily mean that this person or organization is also entitled to appeal the court's decision if the court does not adopt their view of the facts or their view of the law" (id.).
Another court similarly noted that "[a] criminal act is an offense against the sovereign, a wrong injurious not only to the victim but to the public at large," and, although a prosecutor should confer with and consider the wishes of the victim, "that is not to say that the victim is a party to the case, or that a dissatisfied victim has the right to appeal" (Lopez-Sanchez v State of Maryland, 388 Md 214, 226, 879 A2d 695, 701-702 [Maryland Ct of Appeals 2005] [emphasis omitted], cert denied 546 US 1102 [2006]). The same principles apply in this state; even though victims are permitted by statute to make statements at sentencing (see CPL 380.50 [2], [4]-[6]), the Court of Appeals and this Court have held that a crime victim is not a party to a criminal action (see Griessman v Fisher, 252 NY 580, 581 [1929]; People v Griffiths, 155 AD2d 777, 779 [1989]; People ex rel. Cooper v Sheriff of County of Washington, 208 App Div 823, 823 [1924]). By analogy to criminal actions, crime victims are not parties to parole proceedings and do not have standing to challenge parole determinations.
Petitioner argues that if victims do not have standing to challenge decisions granting parole, no one would have the ability to raise such a challenge, even if the Board blatantly disregarded the law. According to petitioner, this cannot be what the Legislature intended, as someone must be able to keep the Board in check. However, nothing in the statute or regulations supports petitioner's argument. For example, the statute directs that "[t]he [B]oard shall provide for the making of a verbatim record of each parole release interview, except where a decision is made to release the inmate to parole supervision" (Executive Law § 259-i [6] [a] [i]), and "[i]f parole is not granted upon such review, the inmate shall be informed in writing within two weeks of such appearance of the factors and reasons for such denial of parole" (Executive Law § 259-i [2] [a] [i]; see 9 NYCRR 8002.3 [b]). Notably, there is no requirement for a verbatim transcript or a written determination if parole is granted; the Board is then required to provide only written conditions of release (see Executive Law § 259-i [2] [a] [i]; 9 NYCRR 8002.3 [a]).
The absence of mandates for a written record and decision — which are necessary for intelligent appellate review (see e.g. Matter of Lopez v Evans, 93 AD3d 983, 984 [2012]; People v Beames, 71 AD3d 1300, 1301 [2010]; Matter of Marcus v Alexander, 54 AD3d 476, 476 [2008]; Matter of Romer v Dennison, 24 AD3d 866, 868 [2005], lv denied 6 NY3d 706 [2006]) — indicates that the Legislature did not envision the possibility of challenges being raised to determinations granting parole. As the inmate/parolee would not be aggrieved by a decision granting parole — except perhaps as to the conditions of release — and no one else has standing to challenge a grant of parole, it makes sense that the Legislature did not require a written record and decision in that instance. Although there may not be any mechanism to challenge or audit the Board in relation to each parole decision, the Board's functioning as a whole is balanced by, and will be tempered by, the power of the Governor to appoint and the Senate to confirm Board members (see Executive Law § 259-b [1]; see also Executive Law § 259-b [6] [permitting the Governor to remove a member for cause]), as well as scrutiny by the public and the media (see e.g. Holly Matkin, Parole Board Member Married To Convicted Murderer Grants Parole To Cop-Killer, Blue Lives Matter, Apr. 23, 2019, https:/
/defensemaven.io/bluelivesmatter/news/parole-board-member-married-to-convicted-murderer-grants-parole-to-cop-killer-8coc4TK-3kagrZQHldQGsw/; Chris Churchill, Judith Clark is freed, and this retired cop is angry, Times Union, Apr. 22, 2019, https://www.timesunion.com/news/article/Churchill-Judith-Clark-is-freed-and-this-13785498.php; KC Baker et al., 9 Children's Deaths Shocked NY Community — and Locals Outraged that Murderous Mom Will Return, People, Aug. 3, 2018, https://people.com/crime/
marybeth-tinning-prison-release-locals-react/; Elizabeth Doran, Cop Killer to be released from NY prison, CorrectionsOne, Dec. 18, 2017, https://www.correctionsone.com/probation-and-parole/articles/467909187-Cop-killer-to-be-released-from-NY-prison/).
Moreover, although, by regulation, "[a]n appeal may be taken from a final determination of the Board . . . regarding a minimum period of imprisonment, parole release, parole rescission or final revocation proceeding" (9 NYCRR 8006.1 [a]), the language of the regulations does not indicate that such an appeal may be taken by anyone other than an inmate or parolee (see 9 NYCRR 8006.1 [b] [setting 30-day limit for appeal and stating that failure to file a notice of appeal within that limit "shall constitute a waiver of the right of appeal by the inmate/violator"]; [d] [providing that, "(w)hile a division form entitled Notice of Appeal is available for use by an inmate/violator, it is not required that said form be utilized to initiate the appeal process"]; [e] [permitting "the inmate/violator or the attorney therefor()" to "request a copy of the transcript of the proceeding from which the appeal was taken"]; 8006.2 [d] [providing that, "(u)pon the taking of an appeal, an inmate/violator may be represented by counsel," then immediately discussing obligations of "(c)ounsel for an appellant"]; 8006.4 [a] [2] [stating that "(t)he written findings and recommendation of the appeals unit shall thereupon be mailed to the inmate/violator or, where the appellant was represented by counsel, to the counsel for appellant"]; [i] [providing that, "(u)pon disposition of an appeal by three reviewing members of the (B)oard, a copy of such decision shall be mailed to the inmate/violator and counsel therefor"])[FN5]. Thus, neither the statute nor the regulations anticipate a situation in which a challenge could be brought to a determination granting parole. As petitioner does not have standing to prosecute this challenge to the Board's determination granting Bell parole, we affirm Supreme Court's dismissal of the petition.
Garry, P.J., and Pritzker, J., concur.




Lynch, J. (concurring).


I respectfully concur. In her second cause of action, petitioner maintains that respondent Board of Parole (hereinafter the Board) failed to consider her victim impact statement as required by Executive Law § 259-i. As such, she seeks a judgment vacating the Board's determination and a new hearing. The majority has determined that petitioner abandoned the claim set forth in her second cause of action and otherwise lacks standing to challenge the merits of the Board's determination. In finding an abandonment, the majority points to language in point II of petitioner's brief that speaks to the merits of the Board's determination. That analysis, however, fails to account for point I of petitioner's brief, which directly addresses the standing issue. There, petitioner maintains that her statutory rights "were nullified by the Board's failure to take into account the details of her victim [impact] statement that establish her injury." This language does not constitute an abandonment of her second cause of action and effectively preserves the argument for our review.
The Board certainly has broad discretion in making a parole release decision, but is statutorily mandated to consider certain factors, including any statement made by the crime victim's representative (see Executive Law § 259-i [2] [c] [A] [v]). This condition recognizes the statutory right of a victim's representative to submit a statement, and a corresponding obligation by the Board to consider the submission. There is no dispute here that petitioner, as the victim's surviving widow, qualifies as the victim's representative.
The core requirements of standing are that a litigant must demonstrate "an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute [*4]alleged to have been violated" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]). Standing principles require a litigant to "have a genuine stake in the litigation" and should not be applied "in an overly restrictive manner where the result would be to completely shield a particular action from judicial review" (id.).
In my view, petitioner has demonstrated an injury that falls within the protection of the statute such that she has standing to assure that the Board has in fact considered her victim impact statement. To hold otherwise, would shield a Board decision that actually disregarded the submission of a victim's representative from judicial review — a consequence that should not and need not be tolerated.
As to the merits, the record shows that petitioner submitted a victim impact statement on January 12, 2018. The transcript of that telephonic interview was emailed to the Board panel on February 22, 2018, and the record includes a "Confidential Summary Sheet" signed by the three panel members on March 1, 2018 representing that they had reviewed the transcript. Given this documentation, and the express acknowledgment in the Board's determination that the underlying crimes have "given the family of the victim cause for life long suffering," the record shows that the Board did consider petitioner's submission. As the Board otherwise acted within its discretion, the petition was properly dismissed.




Egan Jr., J. (dissenting).


Although I agree with the majority that a crime victim does not have standing to challenge the ultimate decision of respondent Board of Parole (hereinafter the Board) to grant or deny parole, my concurring colleague is correct that petitioner had both standing to assert a violation of her statutory right to have the Board consider her victim impact statement (see Executive Law § 259-i [2] [c] [A] [v]) and, on appeal, has preserved her right of review by specifically asserting, as previously set forth in her second cause of action, that her statutory rights "were nullified by the Board's failure to take into account the details of her victim [impact] statement that establish her injury."
In making a parole release determination, the Board is statutorily required to consider "any current or prior statement made to the [B]oard by the crime victim or the victim's representative" (Executive Law § 259-i [2] [c] [A] [v]; see Matter of Pugh v New York State Bd. of Parole, 19 AD3d 991, 993 [2005], lv denied 5 NY3d 713 [2005]). Although I recognize that the Board is not required to articulate in its written decision each of the statutory factors that it considered in rendering a parole release determination (see Matter of Applewhite v New York State Bd. of Parole, 167 AD3d 1380, 1381 [2018], appeal dismissed 32 NY3d 1219 [2019]), here, the Board elected — rightfully so in my opinion — to address the impact of these crimes upon its victims. In doing so, the Board found that the only statement of noteworthy mention was a statement from one of the victim's family members that favored granting parole, and it made no reference to petitioner's victim impact statement that opposed it. Although the Board is not required to decide a case in accord with any particular victim's impact statement, it obviously found this factor to be significant and should have addressed both viewpoints as expressed in the respective victim impact statements provided by the immediate family victims. In my opinion, the Board's failure to do so was arbitrary and capricious and, as such, I would remit this matter to the Board to reopen the hearing for purposes of addressing petitioner's victim impact statement (see generally Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]; cf. Matter of Johnson v New York State Div. of Parole, 65 AD3d 838, 839 [2009]; Matter of Mitchell v New York State Div. of Parole, 58 AD3d 742, 743 [2009]; Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950, 951 [2005]).
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Bell was not named as a respondent, but this Court granted his motion to intervene on appeal.

Footnote 2: Former inmates have a protectable liberty interest in their release on parole (see Morrissey v Brewer, 408 US 471, 483 [1972]; Victory v Pataki, 814 F3d 47, 60 [2d Cir 2016]). Although respondents contend that this appeal is moot due to Bell's release on parole, parolees may be removed from parole if they are afforded due process (see Victory v Pataki, 814 F3d at 60). Because it is unclear whether the relief sought by petitioner — not only rescission of the Board's determination before Bell was released, but also vacatur of the Board's release decision and a new hearing — is available and would provide Bell with adequate due process, we decline to dismiss the appeal as moot.

Footnote 3: The petition's first cause of action complained that the Board violated the law by failing to consider the sentencing minutes (see Executive Law § 259-i [2] [c] [A] [vii]). Petitioner no longer relies upon this argument, as the Board remedied that problem by reviewing the minutes and issuing an amended decision.

Footnote 4: As the dissent correctly states, the Board is not required to articulate in its decision every statutory factor that it considered (see Matter of Applewhite v New York State Bd. of Parole, 167 AD3d 1380, 1381 [2018], appeal dismissed 32 NY3d 1219 [2019]). Therefore, we cannot proceed as the dissent suggests. In any event, the record contains an affirmation from the Board's counsel explaining, with citations, the Board's policy on dealing with victim impact statements and why, consistent with that policy, the Board decision at issue did not explicitly address petitioner's victim impact statement (see Executive Law § 259-i [2] [c] [B]; 9 NYCRR 8000.5 [c] [2]). Thus, even if petitioner did have standing to raise that issue, we would not remit for the Board to formulate a new decision addressing her statement.

Footnote 5: As neither the regulations nor any statute explicitly provide for court review of an administrative determination regarding parole release, court review is available pursuant to the general provisions of CPLR article 78.